IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LUCILLE WALKER | § § § | |
| Plaintiff, | § § | |
| V. | § § § § | CIVIL ACTION NO. H-08-3146 |
| MICHAEL J. ASTRUE COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Before the Magistrate Judge in this social security appeal is Plaintiff's Motion for Summary

Judgment (Document No. 12), Defendant's cross Motion for Summary Judgment (Document No.

10), and Defendant's Reply to Plaintiff's Motion for Summary Judgment (Document No. 13)1.

After considering the cross motions for summary judgment, the administrative record, the written

decision of the Administrative Law Judge, and the applicable law, the Magistrate Judge ORDERS,

for the reasons set forth below, that Defendant's Motion for Summary Judgment is GRANTED, that

Plaintiff's Motion for Summary Judgment is DENIED, and that the decision of the Commissioner of

the Social Security Administration is AFFIRMED.

---

1 The parties consented to proceed before the undersigned Magistrate Judge on February 24, 2009 (Document No.

I.      **Introduction**

Plaintiff Lucille Walker brings this action pursuant to Section 205(g) of the Social Security

Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her applications for

DIB and supplemental security income ("SSI") benefits. Walker argues that substantial evidence

does not support the Administrative Law Judge's ("ALJ") decision, and that the ALJ, Harry L.

Williams Jr., committed errors of law when he found that Walker retained the residual functional

capacity ("RFC") for a restricted range of light work. In particular, the ALJ made the following RFC

determination:

> [Walker] has the residual functional capacity to stand or walk for 6 hours in an 8-hour
> workday; to sit for 6 hours in an 8-hour workday; and to lift or carry 20 pounds occasionally
> and 10 pounds frequently. She must not work around smoke, dust, chemicals, and fumes and
> must be provided a temperature controlled environment to work in. In addition, the position
> must require only minimal reading and writing. (Tr. 24).

The ALJ further found that while Walker could not perform her past relevant work as a custodial

worker, kitchen helper, or child care worker, she nevertheless could perform work as an office

helper, a cafeteria attendant, or a food production worker, and that she was therefore, not disabled.

Walker contends that the ALJ failed to apply the appropriate legal standards and that substantial

evidence does not support the ALJ's decision. According to Walker, the ALJ erred in several

respects, first, by not undertaking the correct analysis at step 4 in its RFC determination as required

by the Code of Federal Regulations and Social Security Rulings. Walker claims that the ALJ failed to

make a "function-by-function" assessment as required by SSR 96-8b by ignoring her subjective

complaints about asthma and about how her obesity was impacting her breathing disorder and her

ability to function properly. Finally, Walker contends that her RFC is less-than-sedentary and, as

9).

such, a directed verdict of disabled should be granted pursuant to Medical-Vocational Rule 201.09. Walker claims that she meets all of the requirements of this rule because she is a 53 year old individual with a 6th grade education whose past work experience is unskilled and who retains a sedentary RFC. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Walker was not disabled as a result of her impairments, the decision comports with applicable law, and that it should therefore be affirmed.

## II.   Administrative Proceedings

Walker applied for disability insurance and supplemental security income benefits on June 14, 2006, claiming that she was unable to work due to the fact that she was obese and had severe asthma problems that limited her ability to function properly. The Social Security Administration denied her applications at the initial and reconsideration stages. After that, Walker requested a hearing before an ALJ (Tr. 24). The Social Security Administration granted her request and the ALJ held a hearing on September 21, 2008, at which Walker's claims were considered *de novo. Id.* The ALJ found, at step one, that Walker had not engaged in substantial gainful activity since the alleged onset of disability. At steps two and three, it was found that Walker had asthma, high blood pressure, and obesity, all of which are severe impairments within the meaning of the Act, but that these impairments did not meet or equal the listed requirements of a listed impairment. The ALJ further found, at step three, that Walker did not have the required number of asthma attacks and that her exacerbations were brought about a result of her not taking her medicine consistently and in a timely manner. At step four, the ALJ concluded that Walker's testimony was not fully credible. He further concluded that Walker had the residual functional capacity ("RFC") for a limited range of light work. In particular, the ALJ found that Walker "ha[d] the residual functional capacity to stand or walk for 6

hours in an 8-hour workday; and to lift or carry 20 pounds occasionally and 10 pounds frequently."
The ALJ further limited Walker's work as follows: Walker "must not work around smoke, dust,
chemical, and fumes and must be provided a temperature controlled environment to work in. In
addition, the position must require only minimal reading and writing." (Tr. 24). Also, the ALJ found
that Walker was unable to return to her past relevant work. At step 5, using the Medical-Vocational
Guidelines as a framework, the ALJ concluded she could perform a restricted range of light work,
including jobs as an office helper, a cafeteria attendant, and a food production worker, all of which
are jobs that exist in significant numbers in the regional and national economy, and that she was,
therefore, not disabled within the meaning of the Act. (Tr. 27).

Walker then asked for review of the ALJ's adverse decision with the Appeals Council. The
Appeals Council will grant a request to review an ALJ's decision if any of the following
circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an
error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions,
findings or conclusions; or (4) a broad policy issue may affect the public interest.
20 C.F.R.§404.970; 20 C.F.R. §416.1470. After considering Walker's contentions, in light of the
applicable regulations and evidence, the Appeals Council concluded that there was no basis upon
which to consider Walker's request for review. The ALJ's findings and decisions then became final.
Walker has timely filed her appeal of the ALJ's decision. 42 U.S.C. §405(g). Both Walker and the
Commissioner have filed Motions for Summary Judgment. This appeal is now ripe for ruling.

The evidence is set forth in the transcript, pages 1-221. There is no dispute as to the facts
contained therein.

III.    **Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C.§ 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a

suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988).    The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.    If the claimant is presently working, a finding of "not disabled" must be made;

2.   If the claimant does not have a "severe impairment" or combination of impairments, he will not be found disabled;

3.   If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.   If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.   If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this framework, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If he is successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 563.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

V.    **Discussion**

   A.    **Objective Medical Evidence**

   The objective medical evidence shows that Walker has and has been treated for asthma,

hypertension, high blood pressure, and obesity.

   The medical records show that Walker was seen at the Medical Center of Louisiana-New

Orleans ("MCLNO") on January 7, 2004, for her asthma and wheezing problems. Dr. Nancy

Diehtelm, M.D., detected no signs of pulmonary disease after evaluating Walker. Additionally, the

source of Walker's wheezing was unclear (Tr. 174). In a follow up examination in August 2005, Dr.

Lisa Wong found that there was modular opacity at her left lower lobe, but that were "no new focal

pulmonary parenchymal diseases, pleural fluid, or cardiac decompensation identified." (Tr. 166).

   The medical records further show that Walker went to the emergency room at Memorial

Hermann Memorial City Hospital in January 2006 because she was having an asthma attack. One of

the things noted in the medical report by the doctor was that Walker had not been taking her

prescribed asthma medication.  At this visit, Walker said that she was under no apparent distress, had

no chest pain, fatigue, or light headedness, and that her respiratory pattern was regular. (Tr. 190). Her

lungs were also clear other than a small nodule in her left lung. (Tr. 195). The doctor prescribed

Walker some Albuterol, an inhaler, and Prednisone. (Tr. 188). A few months later, in July 2006,

Walker again went to the emergency room, this time at the Harris County Hospital District, for an

asthma attack and wheezing problems. (Tr. 200). The doctor reported that she had hypertension, a

general appearance of mild respiratory disease, and a trace of edema. (Tr. 212). After she was given

treatment, Walker said that she was feeling much better and that she was ready to go home. (Tr.

213). The doctor again prescribed her an Albuterol inhaler, Advair, and Prednisone. She was told to

9

follow up with a primary care physician in 2-4 weeks. (Tr. 209).

A series of other medical visits were made by Walker for her asthma and wheezing. In August 2006, Walker went to the Harris County Hospital District, at which time her asthma medication was refilled. (Tr. 220). In September 2006, Walker had her asthma medication refilled. (Tr. 218). Walker's next visit to the Harris County Hospital District occurred in January 2007. At this visit, the doctor made a note on the medical report to "please help patient with gold card problems and allow her to fill prescription." (Tr. 217).  Walker's most recent visit to this same hospital occurred in March 2007, where her asthma medication was refilled. (Tr. 215).

Upon this record, the objective medical evidence supports the ALJ's conclusion that Walker is not disabled. Although Walker maintains that the ALJ erred in not finding her asthma to meet one of the listed impairments in 20 C.F.R. Appendix 1, Subpart P, Regulations No. 4, the objective medical evidence supports the ALJ's impairment determination. The objective medical evidence clearly shows that Walker has asthma. However, the objective medical evidence also shows that Walker's asthma is controlled with medication, and that the reason for Walker's asthma attacks and many visits to the hospital was because she was not taking her medication in proper time intervals. Hospital records establish that Walker's numerous visits to the hospital due to asthma attacks resulted from not taking her medicine because she ran out. A patient who is not taking prescribed medicine may qualify for social security benefits only if: a) the side effects are less tolerable than the symptoms or b) the patient is unable to afford treatment and may not have access to free or low-cost medical services. SSR 96-7b. Walker does not claim to have any adverse side effects as a result of taking the medication and she offers no reason why she cannot pursue low-cost medical services. (Tr. 39-40). When asked by the ALJ at the administrative hearing why she didn't have a gold card,

10

Walker responded, "the gold card I had, it was just like for every month and every time, you know, it collapsed on me, so that means that I can't get nothing." (Tr. 39-40). Walker does not meet the exceptions under SSR 96-7b since she can control asthma symptoms with medication. The ALJ did not err in finding Walker not disabled by asthma.

Similarly, there are no medical records to support a conclusion that Walker's obesity affected or limited her ability to function properly. The medical records are completely silent on her weight problems. Additionally, Walker did not allege obesity as an "illness, injury, or condition" that limited her ability to work on her application for benefits (Tr. 131-32). The objective medical evidence factor therefore weighs in favor of the ALJ's decision.

## B.    Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."). In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler,*

11

770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Further,

regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for

determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)

(quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

      In this case, there are medical opinions from doctors Frederick Cremona, Robin Rosenstock,

and Nancy Diethelm. There are no medical opinions in the record from any of Walker's treating

physicians do not report her physical limitations. In September 2006, Dr. Cremona determined from

his review of Walker's medical record that Walker was in stable condition and that her description of

the severity of her physical limitations was not credible. He found that she had mild wheezing

problems with no rhonci or rales. (Tr. 201). This assessment was confirmed by Dr. Rosenstock in

December 2006, who also added there were no new hospitalizations since the initial assessment.

      Furthermore, Radiologist Nancy Diethelm of the Medical Center of Louisiana-New Orleans

("MCLNO"), in a chest examination done in January 2004, found that there was "no convincing

evidence of pulmonary disease and "no pleural disease or lymph node enlargement." Dr. Diethem

also found that the "cardiac silhouette is at the upper limits of normal in size," and that her

"[p]ulmonary vascular distribution is normal." (Tr. 174).

      Given the ALJ's reliance on the expert opinions of Dr. Cremona, Dr. Rosenstock, and Dr.

Diethelm, whose opinions were found to be credible and consistent with the medical evidence as a

whole, the diagnosis and expert medical opinion factor also supports the ALJ's decision.

### C.    Subjective Evidence of Pain and Disability

      The third element considered is the subjective evidence of pain and disability, including the

claimant's testimony and corroboration by family and friends.  Not all pain and subjective symptoms

are disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. §423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence in the record. 42 U.S.C. §423. "Pain constitutes a disabling condition under the Social Security Act only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selder,* 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 30 F.3d 33, 35 (5th Cir. 1994). In an appeal of a denial of benefits, the Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir. 1983).

At the administrative hearing, Walker testified that she had daily asthma attacks and that this would result in her wheezing and her blood pressure going up. She said that her asthma attacks often forced her to sit down for two or three hours and that she would have to go to the emergency room to get treatment. She also said that she could only walk for about half a block before she started wheezing and had an asthma attack. Additionally, physical activity such as bending, stooping, twisting, turning, and lifting or carrying objects affected her asthma problems. (Tr. 44-48).

The ALJ found that Walker's complaints and subjective symptoms were not entirely credible. In so doing, the ALJ wrote:

13

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not generally credible and are to be given little weight.

The claimant basically testified that she falsified tax returns to get the earned income credit. She alleges that she is disable due to her asthma, but she also testified that she is able to care for her two year old great grandson and a three year old nephew all day for 8 hours a day. Her activities of daily living are inconsistent with a disabling condition.

The claimant also testified that she has gone to the ER due to exacerbations because she is out of medication and she can get treatment there and more medication. The claimant has been non-compliant with her medication. The claimant went to the ER in January 2006 for an asthma attack. She had been off her medication. She was in no apparent distress and denied any chest pain, fatigue, light headedness and her respiratory pattern was regular. X-rays taken at the time showed a small sub centimeter nodule in the left lung and the rest of the lungs were clear.

The claimant went to the ER again in February 2006 and has been out of Albuterol for two weeks. The doctor's notes indicate her wheezing showed moderate severity and that she had shortness of breath, but no other symptoms. The claimant ambulated without assistance. A July 2006 visit to the ER reveals she has been out of her medication for two months. The claimant went to the ER in January 2007 and was out of her medication and again in March 2007 it is noted that she is non-compliant with her medication. The claimant also testified that she keeps running out of medication.

Furthermore, x-rays taken in August 2005 show no new pulmonary parenchymal disease, pleural fluid, or cardiac decompensation. Prior x-rays revealed no evidence of a pulmonary disease or limp node enlargement and the radiologist notes that the source of the claimant's wheezing is not evident. The claimant's cardiac silhouette is normal in size and the pulmonary vascular distribution is normal.

As to the claimant's high blood pressure being disabling, the medical evidence shows no end organ damage. The undersigned has provided for the claimant's asthma, high blood pressure and obesity by giving the claimant a light residual functional capacity with some non-exertional limitations related to her asthma. (Tr. 25-26).

As to Walker's subjective complaint regarding her obesity affecting her breathing disorder, there is no evidence in the record to suggest that the ALJ ignored this problem. The ALJ actually noted that her asthma, high blood pressure, and obesity were in fact severe impairments, but that the

14

impairments either individually or in combination did not meet or equal one of the listed impairments. (Tr. 24, finding no. 4). In her visit to the hospital in January 2006, Walker did not list obesity as an "illness, injury, or condition" that limits her ability to work on her application for benefits. (Tr. 131-32). Additionally, there are no medical opinions from Walker's physicians that state that her obesity affected her functional limitations.

Credibility determinations, such as that made by the ALJ in this case in connection with Walker's subjective complaints, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record supports the ALJ's credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factors also weights in favor of the ALJ's decision.

### D. Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

The record shows that Walker, at the time of the hearing, was fifty-three years old, and she had a sixth grade education. The ALJ questioned Cecille Johnson, a vocational expert ("VE"), at the hearing about Walker's ability to do her past work and her ability to engage in other gainful work

activities. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Brown*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala,* 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's...hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling v. Halala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, both the ALJ and Walker's attorney questioned the vocational expert. The record shows that the ALJ posed the following hypothetical questions to the VE:

> Q: Okay. Let's—looking at her asthma, if she's limited to light work lifting 10 pounds frequently, 20 pounds occasionally, standing and walking, but not working around smoke, dust, chemicals, fumes, also working indoors in a temperature controlled environment to control heat exacerbations, could she return to her past relevant work?
>
> A: No, sir.
>
> Q: Assume a person the same age, education, vocational history of the claimant. Assume those same limitations. Are there other jobs that might be performed?
>
> A: Yes, sir, there are. Such a position would be office helper, 5,000 jobs statewide, 190,000 nationally, and that's—
>
> Q: Is light, unskilled?

A: It's – yes, sir, it's light, unskilled.

Q: And what was – I want to add to that minimal reading and writing requirements, too –

A: Minimal reading and writing.

Q: Okay, laundry press operator.

Q: And the numbers in the region and the national economy?

A: 5,000 statewide –

Q: Um-hum.

A: -- 190,000 nationally.

Q: Um-hum.

A: The second one would be cafeteria attendant, 7,500 statewide –

Q: Um-hum.

A: -- 285,000 nationally.

Q: Okay

A: A third would be food production worker, 4,000 jobs statewide, 190,000 nationally.

(Tr. 51-52). Walker's attorney then questioned the vocational expert about the jobs available to a claimant such as Walker if additional restrictions were added to the hypothetical:

Q: All right. Back to hypothetical number one, assume under that hypothetical you add the additional restriction of this individual would need to take an unscheduled break of 30 to 45 minutes once a day say, for example, for an asthma attack. How would that affect their employability under that hypothetical?

A: It would affect it – would not be able to maintain employment. That's really more than what an employer would find acceptable in terms of taking breaks throughout the day.

17

Q: Okay. So just one a day but if it was severe enough to last 30 to 45 minutes –

A: I do believe so yes.

Q: Okay. And if this person – remove that restriction and add the sole restriction of hypothetical number one. Assume that this person's productive pace would be off from the average by a third; in other words, they were slower than the average worker because of physical and health conditions, how would that affect their employability under hypothetical number one?

A: Well, they may have difficulty maintaining if it's a significantly slower pace than what's normally acceptable.

Q: Okay. All right. You used the word may. Is there a point that – where it would – it's a more definitive answer? I used the term third.

A: It would affect their employability.

Q: Okay. I assume that an individual because of illness would miss work three times a month on average because of the illness, that would eliminate employability as well?

A: Yes, it would.

Q: Okay. How would it affect an individual's employability if they showed visible signs of wheezing, they were audible to co-employees, supervisors, and general public throughout the day? How would that affect somebody's ability to maintain employability?

A: I don't really think that would a difference in employability.

(Tr. 53-54).

Here, the ALJ relied on a comprehensive hypothetical question to the vocational expert, which incorporated all the impairments the ALJ found supported by the record. To the extent Walker alleges that the ALJ erred by not considering the effects of Walker's potential for three day

18

absenteeism, the record did not support this hypothetical. In response to that hypothetical, the vocational expert identified jobs existing in significant numbers in the local and national economy that Walker could perform. The ALJ's hypothetical questions were based on the ALJ's RFC assessment, an assessment which is supported by substantial evidence. Therefore, the vocational expert's testimony in response, the education and work history factor also supports the ALJ's decision.

Walker contends that medical-vocational rule 201.09 should have been applied, which would have directed a finding of disability. That rule could only be applied if Walker had an RFC for sedentary work. ALJ found, based upon substantial evidence, that Walker had the RFC for light work that required only minimal reading and writing as long as she was working in a temperature-controlled environment that was not around smoke, dust, chemicals, and fumes. Given the ALJ's supportable RFC determination, medical vocational rule 201.09 had no applicability.

## VI.    Conclusion and Recommendation

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, as the ALJ used the correct legal standards, and as there is substantial evidence to support the ALJ's decision, the Magistrate Judge

ORDERS that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, the Plaintiff's Motion for Summary Judgment (Document No. 12) is DENIED, and the decision of the Commissioner is AFFIRMED.

Signed at Houston, Texas, this 6th day of _August_____, 2009.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE